**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHEIKHOU SARR,<br><br>                                   Petitioner,<br><br>v.<br><br>WARDEN JEREMY CASEY,<br><br>                                  Respondent. | Case No.:  3:26-cv-02343-RBM-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[Doc. 1]** |

Pending before the Court is Petitioner Cheikhou Sarr's ("Petitioner") Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"). (Doc. 1.)  For the reasons set forth below, the Petition is **GRANTED**.

## I.    BACKGROUND

Petitioner, a citizen of Senegal, entered the United States seeking asylum on January 16, 2024. (Doc. 9 at 2.)  Petitioner was released on humanitarian parole the next day. (*Id*.; *see* Doc. 1 at 5.)  On May 14, 2024, Petitioner applied for asylum and was later issued a work permit as well as a Social Security Number. (Doc. 9 at 2.)  Petitioner alleges that he complied with all the conditions of his parole including attending his required check-ins and court hearings. (*Id*.)  He was also gainfully employed, paid taxes, and "has not committed any crimes or infractions." (*Id*.)

On May 29, 2025, Petitioner attended an immigration court hearing in New York

1

City at which an immigration judge ("IJ") denied his asylum application. (*Id*.) After leaving the courtroom, Petitioner was detained by United States Immigration and Customs Enforcement ("ICE"). (*Id*.) Petitioner was not informed of the reasons for his detention, did not receive any paperwork explaining his detention, and "did not receive an informal interview at which he could contest his detention." (*Id*. at 3.) On June 27, 2025, Petitioner filed an appeal of the IJ's decision denying his asylum application before the Board of Immigration Appeals ("BIA") which was recently granted. (Doc. 9 at 10, Declaration of Cheikhou Sarr ["Sarr Decl."] ¶¶ 4–5.) On March 4, 2026, after almost ten months in detention, Petitioner received a custody redetermination hearing before an IJ and was denied release on bond based on the IJ's finding that he posed a risk of flight. (Doc. 1 at 5; *see* Doc. 8-1 at 2–3.)

On April 10, 2026, Petitioner, proceeding *pro se*, commenced this action by filing the instant Petition (Doc. 1), a Motion to Appoint Counsel (Doc. 2), and an Application to Proceed in District Court without Prepaying Fees or Costs ("IFP Application") (Doc. 3.) On April 16, 2026, the Court issued an order granting the IFP Application, appointing Federal Defenders of San Diego, Inc. as counsel, and setting a briefing schedule. (Doc. 4.) Respondents filed a Response to the Petition on May 4, 2026. (Doc. 8.) Petitioner filed a Traverse on May 5, 2026. (Doc. 9.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

3:26-cv-02343-RBM-MSB

### III.   DISCUSSION

Petitioner claims his "detention has become unconstitutionally prolonged and violates" the Fifth Amendment's Due Process Clause. (Doc. 1 at 6.)  Respondents argue that the Petition should be dismissed because Petitioner did not appeal the IJ's decision denying his release on bond with the BIA and therefore failed to exhaust his administrative remedies.  (Doc. 8 at 1–2.)

As a threshold matter, this Court has granted several habeas petitions filed by similarly situated petitioners who were released from ICE detention on humanitarian parole under 8 U.S.C. § 1182(d)(5) and later re-detained.  For example, in *Perez v. LaRose*, the Court applied the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found "all three factors support a finding that Respondents' revocation of [p]etitioner's parole [§ 1182(d)(5)(A)] without reasoning or an opportunity to be heard deprived [p]etitioner of his due process rights."  Case No.: 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *5 (S.D. Cal. Nov. 13, 2025).  The Court concluded that the revocation of the petitioner's parole violated the Due Process Clause and rendered his detention unlawful. *Perez*, 2025 WL 3171742, at *5.

The Court reached the same conclusion in *Velazquez-Chinga v. Noem*, finding the revocation of the petitioner's parole without an individualized determination or an opportunity to be heard "was neither consistent with 8 U.S.C. § 1182(d)(5)(A) nor the demands of due process."  Case No.: 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (citing *Araujo*, 2025 WL 3278016, at *2.)  As the Court noted, "[d]ue process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination."  *Id*. (quoting *Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025)); *see Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164–66 (S.D. Cal. 2025) (analyzing *Mathews* factors).

Like in *Perez* and *Velasquez-Chinga*, Petitioner was apprehended upon his arrival to

the United States and released from his initial detention on humanitarian parole. (*See* Doc. 1 at 5; Doc. 9 at 1–2.) "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017); *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("As ICE was not authorized to release [Petitioner] if [he] was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined [he] was neither."). The applicable regulations authorize ICE to release a noncitizen from custody for humanitarian reasons only if the noncitizen "present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

Before he was re-detained in May 2025, Petitioner lived in the United States for over a year, was able to apply for asylum relief, maintained employment, and complied with the conditions of his release. (*See* Doc. 1 at 5; Doc. 9 at 1–2.) Petitioner also "has not committed any crimes or infractions." (Doc. 9 at 2.) Respondents therefore implicitly promised Petitioner's continued release, and he reasonably relied on that promise. *See Pinchi*, 792 F. Supp. 3d at 1034 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Petitioner further alleges that he was taken into ICE custody after he attended an immigration hearing "without any notice or explanation." (Doc. 9 at 1, 5.) Indeed, Petitioner was re-detained after he attended an immigration hearing and was not provided with a hearing until almost ten months after his arrest. (*See* Doc. 1 at 5; Doc. 9 at 3; Sarr Decl. ¶¶ 8–10.) Respondents do not identify any alleged violations of Petitioner's parole or any other justification for his re-detention. (*See generally* Doc. 8.) "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). The Court therefore adopts its reasoning in *Perez* and *Velasquez-Chinga* applies it here. For those same reasons, Respondents' revocation of Petitioner's release on parole and his subsequent re-detention without notice or a pre-deprivation hearing violated the Fifth Amendment's Due Process Clause and rendered his detention unlawful.

3:26-cv-02343-RBM-MSB

Administrative exhaustion is also not required because further proceedings would not address the constitutional issues raised in the Petition and exhaustion would be futile. "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)). In the Petition, Petitioner challenges his "arrest [as] unjust and illegal because he was already on [ ]parole," not the IJ's decision to deny bond. (Doc. 1 at 5.) "Any appeal Petitioner would make to the [BIA] would only be a review of the determination by the IJ at the bond hearing [and] would not address the propriety of Petitioner's re-detention, which concerns the constitutionality of an agency action prior to the bond hearing." *Venega-Maltez v. Semaia*, Case No. 5:26-cv-00525-JAK (AGRx), 2026 WL 846035, at *7 (C.D. Cal. Mar. 24, 2026) (citing 8 CFR § 1003.1(d)(3)). "Accordingly, given the inadequacy of available administrative remedies to redress Petitioner's irreparable harm, the Court finds it appropriate to waive any prudential exhaustion requirement." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Although Respondents note that Petitioner received a bond hearing while detained (*see* Doc. 8-1 at 2), "a custody redetermination hearing at some point in time after re-detention is not sufficient to mitigate the risk of erroneous deprivation." *Venega-Maltez*, 2026 WL 846035, at *9 (granting release of a petitioner who was denied release on bond during a bond hearing); *see E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("[S]uch a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.") (citing *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)). Accordingly, the Court finds that Petitioner's immediate release is warranted.[1]

---

[1] In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

5

3:26-cv-02343-RBM-MSB

## IV.   CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. Respondents **MAY NOT** re-detain Petitioner without compliance with 8 C.F.R. § 212.5, 8 U.S.C. § 1182(d)(5)(A), and the Due Process Clause.

3. The Court **ORDERS** that, prior to any such re-detention, Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted.  Respondents **SHALL** bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

**IT IS SO ORDERED**.

DATE:  May 20, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:26-cv-02343-RBM-MSB